*36
 
 [By the Court.
 

 This exception need not be farther answered. We are perfectly clear in the opinion, that, although the District Judge was on the bench, yet, if he did not sit in the cause, he was absent in contemplation of law; and that the case otherwise comes within the provisions of the acts of Congress.]
 

 _
 
 ad, Exception.
 
 It cannot'be made a queftion on this record, that all the proper Plaintiffs were not joined in the a ilion ; fihce the jury have found the
 
 AJfumpfit
 
 as it was laid in the declaration. Befides, there is. nothing to fhew, that there were any other parties; the' owners and captors might have been the fam.e ; or the owners, by a contrail with their mariners (which could hot be affeitedby the prize refolutions of Oongrefs) might have entitled themielves to the whole of the prizes. The ilatement of the fail on the motion for a new trial, is merely the allegation of the interefted party, contradicted by the verdiit, and the rejeilion of the motion.
 

 3d. Exception.
 
 The court below was right in rejecting the evidence offered by the Plaintiff in error. That the papers were offered
 
 en
 
 masse, was his fault; and even if some of them should be deemed good evidence, all must be admitted, or none. But Mr.
 
 Bingham's
 
 own letters to Congress, and the correspondence with his counsel, could not be evidence, for he was a party. The
 
 Marquis de Bouille's
 
 certificate, which has been called an order, is nothing more than a certificate that he had previously given the order to which it refers, and it had been given in evidence by the Plaintiffs. But there is no proof that even this certificate is the act of the
 
 Marquis de
 
 Bouille; for, the Secretary of State only certifies, that the original of the office copy is on his files; and there is no evidence that the original was signed by the
 
 Marquis.
 
 Being, however, merely the statement of a pre-existing fact, and not the exemplification of a record, certified by a regular officer, it should be proved, like évery other fact, in the course of a judicial enquiry, by the oath of a competent witness : the bare certificate of the
 
 Marquis de Bouille
 
 cannot be allowed as proof of a fact, any more than the certificate of any other respectable individual. Yet, admitting that the
 
 Marquis
 
 signed the certificate, and that the certificate is competent evidence of the fact, it was enough to justify the rejection, that it could have no legal effect to prevent the Plaintiffs below from recovering; for, the
 
 Marquis de Bouille’s
 
 order merely authorised a sale of the prize goods, which the Plaintiffs never impeached ; but, on the contrary, presuming the sale to be lawful, they brought, an action of assumpsit, instead of an action of trespass, or trover. Though he might order a sale, the
 
 Marquis
 
 could have no power
 
 *37
 
 to adjudge who should enjoy the benefit, nor to compel Mr.
 
 Bingham
 
 to retain thfe money from its real owners. Besides, it does not appear that the property came into Mr.
 
 Bingham’s
 
 hands, in consequence of the acts of the
 
 Marquis de
 
 Bouille, nor that the
 
 Marquis
 
 ever had possession of it. The
 
 Marquis
 
 directs the proceeds to be retained, liable to the order of Congress : but this could give no jurisdiction to Congress upon the subject ; and Congress had, of itself, no right to decide to whom payment should be made. The act of the
 
 Marquis
 
 is, therefore, merely void ; and leaves the question, as toMr. Bingham, precisely where it stood, before the order was written.
 

 The resolutions of Congress were, also, an improper kind of evidence to be admitted on the issue between the parties; particularly after Congress had become interested by promising indemnification. They were not in the nature of a law, or rule of conduct, commanding any particular act to be done by Mr. Bingham; they were framed subsequent to his act; and tho’ they appeared,
 
 ex post
 
 facto, as to the sale of the prize goods, they neither commanded that sale, nor ordered, or approved, the detention of the proceeds, which alone constitutes the ground of the present demand
 
 *
 
 . But even if Congress had undertaken to issue such orders, their authority to do so might reasonably he questioned. That body had power to controul the operations of war; and, as an incident of war, might lawfully decide, conformably to its appellate jurisdiction, the question of prize, or no prize. But here was no original suit, no process pending, no parties before Congress, in relation to that point; and in relation to the private controversy between the captors and their agent, Congress possessed no authority either to legislate, or adjudicate. Suppossing, however, for a moment, that they had authority to decide, they have not exercised it; they, have barely expressed an opinion ; and can the opinion of any man, or assemblage of men, be given in evidence ? The court had a right to judge, not only whether the evidence comes from a proper source, but, also, whether it applied to the fact in issue : for, even a deed is not evidence unless it has some relation to the matter in dispute. And if the resolutions of Congress were only offered in mitigation of damages, the objection remained. If not proper on the main question, they were not
 
 *38
 
 proper on any question, in the cause ; and, on the merits it may be remarked, that although no interest should be charged, where money is retained by a party, upon any legal compulsion, or with the consent of the claiments, there was no restraint imposed upon Mr.
 
 Bingham
 
 by the
 
 Marquis de Bouillie's
 
 order, nor is any consent pretended.
 

 As to the record of the action of trover,
 
 Carlton v. Bing
 
 ham, it was not pleaded: and, therefore, could not be a bar to the present suit. Neither could it be evidence; for, a verdict in
 
 trover,
 
 is not evidence in
 
 assumpsit.
 
 This appears from the very nature of the actions; the former depending on the proof of a wrongful act, and the latter upon a contract express, or implied. The action of trover failed, because the sale of the goods was not proved to be unlawful, or tortious. 4
 
 Bac. Abr.
 
 60. 1. 3
 
 Mod.
 
 166. Vin.
 
 Abr.
 
 tit. " Evidence," 68. 4
 
 Vin. Abr. 23.pl.
 
 31.
 

 For
 
 the Plaintiff in Error,
 
 in reply. 1. It is objected, that the bill of exceptions does not state the evidence given on the trial for the Plaintiffs below. But it does not appear, that they gave any evidence more than what the record exhibits. The statute says, that the party aggrieved shall propose his exception;to the opinion of the court; but there is, surely, no occassion to insert any part of the evidence, which is not material to the point of exception,
 
 2 Inst.
 
 427.
 

 [By the Court. It is exceedingly clear, that the bill of exceptions is conclusive upon this Court. We cannot presume, or suspect, that any material part of the evidence is omitted. On this objection, therefore, nothing now need be added
 
 *
 
 .]
 

 2. It is objected, that the papers from the office of the Secretary of State, were not proper evidence ; and that though some were good, they could not be received, as the whole were offered
 
 en masse.
 
 The Act of Congress however, (15th Sept. 1789) makes copies under the official seal of the Secretary as valid in proof as the originals ; and it is no reason for rejecting the papers, when offered by the Defendant, that they, or a part of them, had been previously given in evidence by the Plaintiffs. The Court, too, might have separated those that were evidence from the rest. As to the contents of the papers : The letters of Mr.
 
 Bingham
 
 were material to shew that he acted as the public Agent of Congress ; that, as such, he had taken depositions and transmitted the ship’s papers, and that, he had accounted to Congress for the property. The correspondence with his counsel, shews, that his effects had been at
 
 *39
 
 tached on account of this demand ; and, under particular circumstances, the party’s own acts are, evidence in his favour.
 
 12 Vin. Abr.
 
 54.
 
 p.
 
 34, 35. 2
 
 Eq. Abr.
 
 409. The
 
 Marquis de Bouille’s
 
 order, given in evidence by the Plaintiffs, was only a translation, while the
 
 French
 
 original, offered by the Defendant, was rejected. The certificate of
 
 a
 
 Chief Executive Magistrate, is good evidence without an oath. 3
 
 Bl. Com.
 
 333. The certificate would prove, that the cause was entirely of Admiralty jurisdiction ; and whether the certificate was
 
 ex posi
 
 facto, or not, the Jury ought to decide. The 17th article of the
 
 French
 
 Treaty relates to captures from
 
 Enemies
 
 ; but this was a capture from a Neutral; so the Governor had a right to interfere. The Resolutions of Congress are stated in the Bill of Exceptions to be concerning the subject matter of the cause ; and it must be presumed that the Resolutions were sufficiently proved. The Record of
 
 Carlton versus Bingham,
 
 (when
 
 Carlton s
 
 ued as Bailiff to the owners) ought certainly to have been admitted in mitigation of damages, as it shews that Mr.
 
 Bingham
 
 could not have paid the money with safety to the present claimants, till the question of prize was determined. 4
 
 Co.
 
 94.
 
 b.
 

 The Judges, after some advisement, delivered their opinions, seriatim.
 

 Patterson,
 
 Justice.
 

 I am clearly of opinion, that the certificate of the
 
 Marquis de
 
 Bouille, registered in the Admiralty of Martinique, ought to have been admitted as evidence upon the trial of this cause. He was Governor of the Island, possessing a high executive and superintending controul ; and we must presume, that he acted, on this occasion, with legitimate authority.
 

 Those letters which were written to Congress by Mr.
 
 Bing
 
 ham, at the time of the transaction, should, likewise, in my opinion, have been submitted to the Jury. On the arrival of the captured vessel, the Governor might have awarded absolute restitution: but, chusing to adopt a middle course, he directed the cargo to be sold, and the proceeds to remain in the hands of Mr. Bingham, as the Agent of Congress, till Congress should instruct him how to act. In the character of a public agent, therefore, Mr.
 
 Bingham
 
 received the property; and his cotemporaneous correspondence on the subject, in that character, with the
 
 American
 
 government, was, certainly, proper evidence, to shew the original nature, and complexion of the facts in controversy. I have more doubts on the admissibility of the other letters referred to in the Bill of Exceptions ; but, in relation to them, it is unnecessary to give a decided opinion.
 

 With respect to the Resolutions of Congress, two questions may be proposed, in order to determine, whether they ought to have been admitted as evidence : I. Had Congress authority
 
 *40
 
 to pass such Resolutions ? and 2. Did the Resolutions relate to the subject of the controversy ? I have lately had occasion, in the case of
 
 Doane versus
 
 Penhallow
 
 *
 
 , to express my sentiments at large on the authority of Congress (of which, in its application to the present object, I do not entertain the slightest doubt) And no man of common candour can hesitate, for a moment, to pronounce, that the Resolutions have an immediate and necessary connection with the merits of the cause. They ought, then, to have been admitted ; but what should be their force and operation, is another point, not, at present, before the Court.
 

 I am, also, of opinion, that it was improper to reject the Depositions, which Mr.
 
 Bingham
 
 had taken, in his public, official, character, to ascertain the circumtances of the capture, and the property of the vessel and cargo, at the time the supposed prize was carried into
 
 Martinique.
 

 IREDELL,
 
 Justice.
 

 It appears satisfactorily to me, that many of the documents offered in evidence, have been improperly rejected. From an inspection of all the papers, which are attached to the Record, the nature of the dispute may be easily ascertained. The Plaintiffs alledge that Mr.
 
 Bingham
 
 received, on their account, as their agent, property which had been captured by them as prize ; and that, whether the capture was lawful, or not, he was bound to account to them, though they might be responsible to the original owners, if any wrong had been committed. To this charge, Mr.
 
 Binghatn
 
 answers, that he never was the Agent of the Plaintiffs, but a Public Agent ; and that he did not receive the property from them on their account ; but from the
 
 Marquis de
 
 Bouille, on account of the true owners. Admitting either of these positions, a direct and certain consequence will insue. If the Plaintiffs are right, the consequence is, that Mr.
 
 Bingham
 
 ought to surrender the prize property, or account for its proceeds, to them; and though they, as captors, may be sued by the neutral claimants, the existence of a neutral claim will not justify his refusal so to surrender, or account.. But, if the Defendant is right, the consequence is, that he ought not to deliver up the property to the Plaintiffs until it has been ascertained that the capture was lawful, which must be done through the medium of a Prize Court, not by a Judgment in a Court of common law. From this view of the controversy, therefore, it must be of great moment that Mr.
 
 Bingham
 
 should have an opportunity to shew, that he had acted, throughout the business, as the Public Agent of the
 
 United
 
 
 *41
 
 States; and that his communications to Congress were open, fair, and faithful. If, indeed, he had given
 
 parol
 
 testimony on these points, his opponents might have called for the records of the appointment and correspondence, as affording higher proof. I am, therefore, of opinion, that Mr.
 
 Bingham’s
 
 official letters, (some of which were written before any dispute existed, or could reasonably be anticipated) ought not to have been rejected.
 

 The Resolutions of Congress, likewise, were proper evidence ;-not, indeed, to prove, that the Plaintiffs were not entitled to the money in question, but to prove that the Defendant was recognized in the transaction as the Agent of Congress. The Resolutions are not to be considered as the mere expression of a Congressionail opinion, but as an acknowledgment that Mr.
 
 Bingham
 
 was a public agent, and that the public, as his principal, was accountable for the money.
 

 The certificate of the
 
 Marquis de
 
 Bouille, whether regarded as an original order, or as the evidence of a parol order, previously given, ought to have been laid before the jury. The
 
 Marquis
 
 acted officially, as Governor and Commander in Chief; and we must presume, that he exercised a lawful authority, in a lawful manner.
 

 Under these circumstances it only remains to consider, what course should be "pursued by the Court, in order to give the Defendant the benefit of a trial, upon a full view of his legal proofs. I think, for that purpose, that a
 
 Venire Facias de novo
 
 ought to issue. For, although a Court of common law has no jurisdiction of the question of prize ; yet, whether it is necessary in the present case to determine that question, must depend upon the facts, which are established at the trial. On a Count for money had and received, &c. the Court below has,
 
 prima facie,
 
 jurisdiction; and if the jury shall think Mr.
 
 Bingham
 
 was merely the agent of the Plaintiffs, the validity of the capture, as prize, can form no ingredient in deciding the issue. If, on the contrary, the jury shall think Mr.
 
 Bingham
 
 acted as a public agent, their verdict must be in his favour; as he was bound to keep the property for the real owners ; and the captors can never shew that they are the real owners, until the vessel and cargo have been condemned as prize, by a competent tribunal. The captors may then proceed against Mr.
 
 Bingham
 
 in a Court of Admiralty, whose decree of condemnation, operating against all the world, would entitle the captors to receive the money, and justify Mr. Bingham, or Congress, in paying it.
 

 Wilson,
 
 Justice.
 

 In several instances, I concur in the sentiments, that have been delivered by the Judges, who have preceded me ; but, I think, it is unnecessary to specify the par
 
 *42
 
 ticulars or to amplify the reasons, since I continue clearly in my opinion on the point, which was separately argued, that this cause is exclusively of Admiralty jurisdiction. On that ground I chuse entirely to rest the judgment that I give : but it leads inevitably, also, to another conclusion, that, the Court not having jurisdiction, a
 
 Venire Facias de novo
 
 (which, in effect, directs the exercise of jurisdiction) ought not to issue. I am, therefore, for pronouncing, simply, a judgment of reversal.
 

 Paterson,
 
 Justice.
 

 I cannot agree to send a
 
 Venire Facias de novo
 
 to a Court, which, in my opinion, has no jurisdiction to try, or to decide, the cause.
 

 Cushing,
 
 Justice.
 

 I shall give no opinion upon the question of affirming, or reversing, the Judgment of the Court below. My brethren think there is error in the proceedings; and they are right to rectify it. On the question, however, of awarding a
 
 Venire Facias de
 
 novo, I agree with Judge Iredell : But, as the Court are equally divided, the Writ cannot, issue.
 

 Judgment reversed ; but no writ of
 
 Venire Facias de novo
 
 was awarded.
 

 *
 

 jtatterson,
 
 JuJiice,
 
 Does not'the Aibfcquent approbation of Con-gr.efs amount to the lame-thing as if they had iifued a precedent order ? .
 
 Dexter.
 
 In fome cafes that principle operates. But Congrefs had not competent authority to protect Mr.
 
 Bingham
 
 in the prefent inftance, either by ifiulng a previous order, or by expreifing a iubfequent approbation. If an aft, originally wrong, gave a party the.right to recover damages., uo refolution of Congrefs could, retrbfpeftivclyy afí'eft that right.
 

 *
 

 Cushing,
 
 Jrf'cs,
 
 did not feem to coincide in this opinion, but the other three Judges were decided.
 

 *
 

 See the Cafe referred tó,
 
 po/l.
 
 I have not thought it material to preferve the'ordcr of time, in which the Cafes occurred, any'further than by deiignating the-refpeiftive Terms,